## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 31 2018, 8:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of T.W., Father, and L.J. and A.W., Minor Children: | October 31, 2018 |
| | Court of Appeals Case No. 18A-JT-623 |
| T.W., | Appeal from the Wells Circuit Court |
| *Appellant-Respondent*, | |
| v. | The Honorable Kenton W. Kiracofe, Judge |
| Indiana Department of Child Services, | Trial Court Cause Nos. 90C01-1706-JT-13 90C01-1706-JT-14 |
| *Appellee-Petitioner*. | |

**Kirsch, Judge.**

[1] T.W. ("Father") appeals the juvenile court's order terminating his parental rights to his minor children, L.J. and A.W. ("the Children"). Father raises the following restated issue for our review: whether the juvenile court's termination order was clearly erroneous when it found that there was a reasonable probability that the conditions that resulted in the Children's removal will not be remedied and that termination of Father's parental rights was in the best interests of the Children.

[2] We affirm.

## Facts and Procedural History

[3] In December of 2015, Father and N.B. ("Mother")[1] resided in Markle, Indiana with L.J. and A.W. On December 5, 2015, when L.J. was seven years old and A.W. was three months old, Department of Child Services ("DCS") received a report that Mother had overdosed on heroin while the Children were in the home, and she had to be revived by paramedics. *Tr. Vol. II* at 55. At the time, T.W. was out on bond for two pending Level 6 felony charges. *Id.* at 31. The Children were removed from Mother and Father's care that day and were placed with the maternal grandmother. *Id.*

---

[1] Mother signed consents for the Children to be adopted, *Tr. Vol. II.* at 23, and she does not participate in this appeal, although she is party on appeal pursuant to Indiana Appellate Rule 17(A).

[4] On December 8, 2015, DCS filed a child in need of services ("CHINS") petition alleging in part: 1) On December 5, 2015, Mother and Father were at the apartment with the Children when Mother overdosed on heroin; 2) when paramedics arrived, Mother was considered deceased but was revived through chest compressions and medication; 3) Father has a pending criminal case for dealing heroin; and 4) Father has submitted a drug screen for which the results are still pending. *Ex. Vol. III*, *DCS Ex.* 18 at 50-51.

[5] On January 21, 2016, Father and Mother admitted to the allegations in the petition, and the Children were adjudicated as CHINS. *Id.*, *DCS Ex.* 21 at 59-60. On February 4, 2016, the juvenile court issued its dispositional decree, which ordered Father, in part, to complete various services, including psychological and substance abuse evaluations and treatment, home-based counseling, random drug screens, and supervised visitation. *Tr. Vol. II* at 58, 62, 67, 69. The juvenile court also ordered Father to refrain from using drugs, complete a parenting assessment, and meet with medical/psychiatric personnel and to take all medications as directed. *Ex. Vol. III, DCS Ex.* 21 at 63-65.

[6] Two weeks before the dispositional decree, Father, Mother, and the Children were evicted from their apartment. *Id*. at 59. After that, their housing situation was unstable. *Id*. During this time, Father's employment record was sporadic. For instance, he left one job after just two months because he "was battling a drug addiction and it was hard for [him] to wake up and go to work every day." *Id*. at 30-31.

[7] Father failed to fulfill many of the requirements of the dispositional decree. He failed six drug screens and did not show up for other drug screens. *Tr. Vol II* at 34, 63-64; *Ex. Vol. III, DCS Ex.* 1 at 3, *DCS Ex. 5* at 14, 14; *Ex. Vol. IV, DCS Ex.* 31 at 14. He failed to complete psychological evaluations, substance abuse programs, and home-based counseling and was discharged from programs designed to provide those services. *Tr. Vol II* at 58-61, 67-68, 86.

[8] Father also failed to consistently attend supervised visits with the Children, so his visits were put on hold. *Id.* at 70, 93. He was required to submit three consecutive negative random drug screens before visits could resume. *Id.* at 82. Father complied, and his visits resumed, but the visits were again put on hold because of his noncompliance with drug screen protocols. *Id.* at 70-71, 82. In April 2016, Father's visits resumed, but they ended once he was incarcerated at the end of May 2016for level 5 dealing in a narcotic drug and level 6 felony dealing in a substance represented to be a controlled substance. *Id.* at 71; *Ex. Vol. IV, DCS Ex.* 48 at 94.

[9] As of the date of the termination hearing, October 24, 2017, Father had sent Children a couple of letters, but had not seen them face-to-face since May of 2016. *Id.* at 71-73.

[10] Father was incarcerated at the end of May 2016. His release date is November 22, 2020; however, he could be released as early as late 2018 if he completes certain programs. *Id.* at 27. However, once released from the Department of

Correction, besides serving probation for eighteen months, he will serve ninety days in the Wells County Jail for check deception and check fraud. *Id.*

[11] On June 23, 2017, DCS filed verified petitions for the termination of Father's parental rights as to each child. *App. Vol. II* at 17, 22–25, 41–44. Both petitions alleged, in part, that there is a reasonable possibility that the conditions that led to removal of the Children will not be remedied and that termination of Father's parental rights is in the best interest of the Children. *Id.*

[12] At the termination hearing, Father admitted that he had been battling a drug addiction for four years, eventually becoming addicted to heroin. *Id.* at 32-33. Because he was using heroin once or twice a day, he spent between $100 and $200 per week on the drug. *Id.* at 34. He also used methamphetamine and cocaine. *Id.* He also admitted that he had "slipped" a few times during incarceration by using drugs. *Id.* at 36.

[13] The guardian ad litem testified that termination of parental rights and adoption was in the Children's best interests because Father has been unable to maintain his sobriety for a significant length of time. *Id.* at 99-100. She said that the Children "have really been on a rollercoaster ride" and during the twenty-two months that they had been removed, no progress had been made and that they needed permanency and stability. *Id.* at 100-01.

[14] After the hearing, the juvenile court issued findings of fact and conclusions of law, which included:

During the termination fact-finding hearing. Father admitted to being addicted to heroin and spending between $100-$200 per week on heroin. If he was unable to procure heroin, he would use cocaine.

. . . .

While incarcerated, Father admitted that on two occasions he tested positive for using a controlled substance for which he did not have a prescription. Consequently, he was placed in a higher security unit at the DOC.

During much of the pendency of the children in need of services matters, Father was incarcerated. When he was not incarcerated, he continued to use illegal substances, dealt in heroin and did not avail himself to any services to enhance his parenting ability.

Since the children's removal, they have not returned to Father's home for a trial home visit.

Since Father's incarceration on May 24. 2016, he has not had any visitation with the children, and [has] only written the children on a few occasions.

Since December 5. 2015, [L.J.] and [A.W.] have been removed from their home and not returned on a trial home visit.

Since December 5, 2015, [the Children] have been under the supervision of the county office of family and children.

. . . .

Father cannot comply with services because he is incarcerated.

*Appellant's App. Vol. II* at 60-63.  In terminating Father's parental rights, the juvenile court concluded:

> Based on Father's pattern of substance abuse, dealing in illegal substances, arrests, convictions, and incarcerations, the Court finds that there is reasonable probability that the conditions that resulted in (the) children's removal will not be remedied [and that] termination of parental rights is in the best interest of the children.

*Amended Judgment* at 7.

[15] Father now appeals.

# Discussion

[16] The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his child, but parental rights may be terminated when a parent is unable or unwilling to meet his responsibilities.  *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005).  Thus, parental rights are not absolute and must be subordinated to the child's interests.  *In re J.C.*, 994 N.E.2d 278, 283 (Ind. Ct. App. 2013).  The purpose of terminating parental rights is not to punish the parent but to protect the child.  *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*.

[17] In reviewing a termination case, we do not reweigh the evidence or judge the credibility of the witnesses.  *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009).  Instead, we consider only the evidence and reasonable inferences that

most favor the judgment. *Id*. We will set aside the court's judgment only if it is clearly erroneous. *Id*. at 148-49. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *In re S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). Where, as here, the juvenile court entered specific findings and conclusions, we apply a two-tiered standard of review. *In re B.J.*, 879 N.E.2d 7, 14 (Ind. Ct. App. 2008), *trans. denied*. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id*. A finding is clearly erroneous only when the record contains no facts or inferences drawn therefrom that support it. *Id*. If the evidence and inferences support the trial court's decision, we must affirm. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied.*

[18] The controlling statute is Indiana Code Section 31-35-2-4(b)(2). In relevant part it provides:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> > . . .
>
> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State's burden of proof is one of clear and convincing evidence. *In re H.L.*, 915 N.E.2d at 149. If the juvenile court finds that the allegations in a petition are true, it shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

### *Remediation of Conditions*

[19] Father claims the juvenile court erred in concluding that the conditions that led to the Children's removal would not be remedied. He acknowledges that, for now, he remains incarcerated and is unable to care for the Children, but counters that he is attempting to gain early release in December of 2018. *Tr. Vol. II.* at 27-28, 43-44. Father also acknowledges that his chronic drug addiction resulted in his failure to complete services ordered by the juvenile court, but he observes that he partially complied with required services when, for instance, he attended each of the five child and family team meetings conducted before his incarceration in May 2016. *Id.* at 74. He also states that he continued to have contact with his children, despite his incarceration, by telephoning them during Mother's visits with them. *Id.* at 46.

[20] To determine if the conditions would be remedied, we first ascertain what conditions led to the removal. *In re K.T.K.*, 989 N.E.2d 1225, 1235 (Ind. 2013). Second, we "determine whether there is a reasonable probability that those conditions will not be remedied." *In re I.A.,* 934 N.E.2d 1127, 1133 (Ind. 2010).

In reaching those decisions, "the trial court must consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Bester*, 839 N.E.2d at 152. "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. "Habitual conduct may include criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment, but the services offered to the parent and the parent's response to those services can also demonstrate that conditions will be remedied." *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 647 (Ind. 2015). "At the same time, however, a trial court should judge a parent's fitness to care for his child as of the time of the termination proceeding, taking into consideration evidence of changed conditions." *Bester*, 839 N.E.2d at 152 (internal citations omitted).

[21] Here, Father asks us to reweigh the evidence, which our standard of review does not allow. *In re H.L.*, 915 N.E.2d at 149. The evidence supporting the juvenile court's ruling amply demonstrates a habitual pattern of conduct that suggests a substantial probability of future neglect or deprivation. *See Bester*, 839 N.E.2d at 152. Father failed to consistently submit to random drug screens, he did not follow through with his psychological evaluation, and he was discharged from several substance abuse programs due to non-compliance. *Tr.*

*Vol. II* at 60, 63-64, 67-68; *Ex. Vol. III, DCS Ex*. 26 at 91-92; *Ex. Vol. IV, DCS Ex.* 31 at 14-15.

[22] Father's habitual pattern of conduct regarding visitation is also troubling as he failed to consistently attend visitation sessions with the Children. *Tr. Vol. II.* at 70-73. "[T]he failure to exercise the right to visit one's children demonstrates a lack of commitment to complete the actions necessary to preserve [the] parent-child relationship." *Lang*, 861 N.E.2d at 372.

[23] Furthermore, Father's habitual drug use and related criminal record also suggests a substantial probability of future neglect or deprivation. He continued to use drugs during the underlying case. He admitted he was addicted to heroin and that he would also take methamphetamine and cocaine. *Tr. Vol. II* at 32-34. He failed six drug screens. He was arrested in May of 2016 on drug-related charges, was still incarcerated at the time of the termination hearing, and occasionally still used illegal drugs even while incarcerated. *Id.* at 36, 38, 42, 44, 48-49.

[24] Father correctly observes that even when the date of release from incarceration is more than two years away from the date of the termination hearing, it is improper to conclude that such a time frame, standing alone, is sufficient to conclude that the conditions that led to removal will not be remedied. *See K.E.*, 39 N.E.3d at 641. Because he could be released as early as December of 2018, Father's release date could be as little as fourteen months after the termination hearing, so Father contends the trial court's termination-of-rights ruling was

clearly erroneous.  However, this argument is unavailing because, as set forth above, many reasons besides Father's incarceration support the juvenile court's conclusion that Father would not remedy the conditions that led to removal of the Children.

*Best Interests*

[25] In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence.  *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).  In making this determination, the juvenile court must subordinate the interests of the parent to that of the child.  *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.  Standing alone, incarceration of a parent is insufficient to support a finding that termination of parental rights is in the best interest of a child.  *In re G.Y.*, 904 N.E.2d 1257, 1264-66 (Ind. 2009).  However, a parent's historical inability to provide a suitable, stable home environment supports a finding that termination is in the best interests of the child.  *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012).  Testimony of service providers and evidence that the conditions resulting in removal will not be remedied are sufficient to show by clear and convincing evidence that termination is in the child's best interests.  *In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014), *trans. denied.*  Permanency and stability are key considerations in determining the best interests of a child.  *In re K.T.K.*, 989 N.E.2d at 1235.

[26] Here again, Father impermissibly asks us to reweigh the evidence.  The totality of the evidence clearly supports the juvenile court's conclusion that termination

of Father's parental relationship with the Children was in their best interests. Father was unable to provide a drug-free home as Mother nearly died from a heroin overdose while the Children were present. He could not establish a stable housing situation as he and Mother were evicted and did not find permanent housing after they were evicted. Furthermore, Father's drug addiction, sporadic employment, criminal history, and failure to comply with court-ordered services underscore his historic inability to provide a suitable, stable home environment and his continuing inability to do so. *In re A.P.*, 981 N.E.2d at 82. A parent's failure to demonstrate an ability to effectively use the services recommended to them is sufficient to demonstrate that termination is in the child's best interests. *See In re T.F.*, 743 N.E.2d 766, 776 (Ind. Ct. App. 2001).

[27] The juvenile court's best-interest finding was buttressed by the guardian ad litem, who testified that termination of parental rights was in the Children's best interests because Father was unable to maintain his sobriety for a significant length of time. *Tr. Vol. II* at 99-100. She also said that the Children "have really been on a rollercoaster ride," and during the twenty-two months that they had been removed, no progress had been made and that they need permanency and stability. *Id.* at 100-01. Thus, the trial court's conclusion that termination of Father's parental rights was in the best interests of the Children was not clearly erroneous.

[28] In sum, the juvenile court's findings that there is a reasonable probability that 1) Father will not remedy the conditions resulting in Children's removal; and 2)

termination of Father's parental rights is in Children's best interests were not clearly erroneous.

Affirmed.

Vaidik, C.J., and Riley, J., concur.